SANDRA R. BROWN
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
JAMES C. HUGHES (CBN 263878)
VALERIE L. MAKAREWICZ (CBN 229637)
Assistant United States Attorney
    Federal Building, Suite 7211
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2729
    Facsimile: (213) 894-0115
    E-mail: Valerie.Makarewicz@usdoj.gov
Attorneys for United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SEAN DAVID MORTON, et al.,<br><br>Defendant. | No. CR 15-00611-SVW<br><br>UNITED STATES' SENTENCING MEMORANDUM FOR DEFENDANT MELISSA MORTON; DECLARATION; EXHIBITS |

    The United States of America, by and through its undersigned counsel, hereby submits a sentencing brief in anticipation of the sentencing of defendant Melissa Morton currently scheduled for September 18, 2017.

    As set forth more fully below, the Government agrees with the recommendation of the Probation Office that defendant Melissa Morton should be sentenced to a term of imprisonment of 78 months, followed by 5 years of supervised release, and further be ordered to pay $480,322.55 in restitution to the Internal Revenue Service (IRS), and a special assessment of $2,800.

    The United States' Sentencing Brief is based on the attached memorandum of points and authorities, the Presentence Report (PSR) and disclosed Letter of the United

States Probation Office at Docket Nos. 235 and 236, defendant's sentencing position at Docket No. 265, the evidence and testimony adduced at the trial of this case, the records and files of this case, the Declaration of IRS-CI Special Agent John Lucero and supporting exhibits attached filed concurrently herewith, and any argument the Court may adduce at the hearing on this matter.

DATED:                                    SANDRA R. BROWN
                                          Acting United States Attorney
                                          THOMAS D. COKER
                                          Assistant United States Attorney
                                          Chief, Tax Division

                                          ___/s/_____
                                          VALERIE L. MAKAREWICZ
                                          JAMES C. HUGHES
                                          Assistant United States Attorneys
                                          Attorneys for the United States of America

# Table of Contents

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1
    I.    Summary of the United States' Sentence Recommendation ....................... 1
    II.    Procedural History ........................................................................ 1
        a.    Indictment ........................................................................ 1
        b.    Trial ........................................................................ 2
        c.    PSR and Letter ........................................................................ 2
        d.    Recent Conduct by Defendant ........................................................ 2
    III.    Government's Offense Level Calculation ........................................... 3
        a.    Loss Regarding Section 287 counts ................................................ 3
        b.    Loss Regarding Section 371 count ................................................. 5
        c.    Loss Regarding Section 514 counts ................................................ 5
        d.    Combined Offense Levels and Recommended Sentence ........................... 9
    IV.    Consideration of Section 3553(a) factors ............................................ 9
        a.    Nature and circumstances of offense and defendant's history and characteristics ........................................................................ 10
        b.    Deterrence, respect for the law, and protection of the public ................. 12
        c.    Need to provide educational or vocational training ............................ 13
        d.    Need to avoid unwarranted sentencing disparities .............................. 13
        e.    Defendant's minimization of her criminal acts ................................... 14
        f.    Need for restitution .................................................................... 16
    V.    Conclusion ........................................................................ 17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Summary of the United States' Sentence Recommendation

The United States has no objection to the PSR or the disclosed Letter and agrees with the Probation Office's finding that defendant's total combined adjusted offense level is 28. A term of **78 months** imprisonment is warranted in this case, as explained further below.

## II. Procedural History

### a. Indictment

Defendant, along with her husband and co-defendant Sean David Morton, was charged in the first superseding indictment (FSI) filed on January 27, 2016, with one count of conspiring to defraud the United States in violation of 18 U.S.C. § 371 (Count 1), two counts of filing false claims against the United States in violation of 18 U.S.C. § 287 (Counts 4 and 5), and 25 counts of passing, presenting, and/or offering, false or fictitious financial instruments in violation of 18 U.S.C. § 514 (Counts 8 and 33-56) either on her behalf, or ones she and her co-conspirator marketed, sold, prepared, and passed on behalf of their "clients." Docket No. 17. Count 1 of the FSI related to defendants' conspiracy to defraud the United States between March/April 2009 and April 2013. Counts 4 and 5 of the FSI pertained to a fraudulent federal income tax return and a fraudulent claim for refund filed by defendant during the aforementioned time period, wherein defendant claimed false federal tax refunds based on nonexistent Original Issue Discount (OID) income and withholdings. Count 8 pertains to a false bond that defendant submitted to the IRS in the amount of $600,000. Finally, Counts 33 through 56 of the FSI related to fictitious financial instruments prepared, marketed, and sold by defendant and her co-conspirator on behalf of clients who wanted to pay off their commercial debt with various financial institutions.

On February 4, 2016, defendant plead not guilty to all counts. Docket No. 37.

### b. Trial

Beginning on April 4, 2017, a four day trial commenced, and on April 7, 2017, a jury returned guilty verdicts against defendant and her co-defendant on all counts. Docket No. 195.

### c. PSR and Letter

On June 16, 2017, the Probation Office disclosed the PSR and Letter, wherein it recommend that defendant's offense level be 28, defendant's criminal history be Category I, and defendant be sentenced to a term of imprisonment of 78 months, which is the low-end of the advisory Sentencing Guidelines range for said offense level. Letter, p. 1. This recommended term consists of 78 months on each of Counts 8, and 33 through 56, and 60 months on each of counts 1, 4, and 5 of the FSI, all to be served concurrently. Id., p. 2. The Probation Office recommended the imposition of a 5 year term of supervised release, a restitution order of $480,322.55 payable to the IRS, a fine in the amount of $12,516, and a special assessment of $2,800. Id., pp. 1-2. The Probation Office recommends certain terms and conditions to be imposed on defendant during supervised release. Id. p. 2.

### d. Recent Conduct by Defendant

On June 19, 2017, defendant's husband and co-defendant, Sean David Morton, failed to appear at his sentencing hearing. Thereafter, this Court issued a warrant for his arrest. On June 28, 2017, defendant Melissa Morton agreed as a condition of her bond that she not have any contact with defendant Sean David Morton. Docket Nos. 241, 242.

On August 21, 2017, defendant Melissa Morton was arrested with her co-defendant at the Desert Hot Springs Hotel and Spa, in Desert Hot Springs, California. Defendants had checked into the hotel on August 20, 2017, and had made a two-day reservation. Defendant was in her vehicle about to leave the

premises when IRS-CI Special Agents stopped her.  Declaration of IRS-CI Special Agent John Lucero, ¶ 5.

### III. Government's Offense Level Calculation

The United States provides the following substantiation of the loss in relation to the recommended offense level for defendant, similar to that it submitted to the Probation Office.  PSR, ¶ 13.

### a. Loss Regarding Section 287 counts

#### i. Facts proven at trial

Defendant was convicted of submitting false claims to the United States in Counts 4 and 5, in violation of 18 U.S.C. § 287, which conduct occurred in December 2010 and June 2012.  During this time period, defendant submitted a federal income tax return and a claim for refunds to the IRS in amounts in which she was not entitled, with each falsely claimed that defendant earned OID income from various financial institutions and reported that the majority of this income had been withheld and paid over to the IRS.  Defendant claimed that she was entitled to federal tax refunds based on the difference between the resulting income tax and the amount of the reported withholdings.  As proven at trial, these claims were fraudulent, as defendant had no OID income, and no withholding paid over to the IRS.

In addition, though the government did not charge all of the claims for refunds that defendant submitted to the IRS beginning in 2009 through 2012 as separate violations of section 287, in addition to the loss in Counts 4 and 5, such should be included in calculating defendant intended loss had the scheme been successful.  Further, these false claims were included as overt acts with respect to Count 1, conspiracy.  As introduced into evidence at trial, in March 2009, defendant filed a false income tax return with the IRS for 2007 which claimed a refund based on false OID income and withholding.  See Declaration of IRS Special Agent John Lucero, Exhibit 6.  In August 2010, defendant filed a 2007

income tax return claiming fraudulent tax refunds based on false OID income and non-existent income tax withholdings. See Declaration, Exhibit 13. In December 2010, defendant filed a false income tax returns claiming a larger refund, and paradoxically reported zero income but a large amount of income tax withholdings, and claimed a refund for the entirety of these false withholdings. See Declaration, Exhibit 17. Finally, in June 2012, defendant attempted to obtain false refunds from the IRS by filing a false Form 843, Claim for Refund. See Declaration, Exhibit 19.

## ii. Applicable Loss

As seen in the Sentencing Guidelines and its related commentary, "tax loss" is the amount of the loss that was the object of the offense, including conduct that is a continuing pattern of violations of tax laws by the defendant. U.S.S.G. § 2T1.1(c)(1) and commentary application note 2. Total tax loss includes each instance that involved a false claim. Id. This definition is supported in section 2B1.1 and related commentary, application note 3(A) of the Guidelines. There, the Sentencing Commission defined the loss to include the greater of actual or intended loss, defined as the pecuniary harm the defendant purposefully sought to inflict. Id.

The following chart enumerates the entirety of defendant's intended loss with respect to every false claims for refund she submitted to the IRS:

| Date<br>(Count, Overt Act ¶, Exhibit #) | Claim for Refund | Amount |
|---|---|---|
| March 13, 2009 (Count 1, ¶ 19, Ex. 6) | 2007 Form 1040 | $12,305 |
| August 31, 2010 (Count 1, ¶ 42, Ex. 13) | 2007 Form 1040 | $12,305 |
| December 3, 2010 (Count 1, ¶ 46, Count 4, Ex. 17) | 2007 Form 1040 | $14,816.70 |
| June 21, 2012 (Count 1, ¶ 48, Count 5, Ex. 19) | IRS Form 843 for 2007 | $12,727 |
| | **Total False Claims:** | **$52,153.70** |

As such, defendant's base offense level for the section 287 offenses is **14**. U.S.S.G. § 2T4.1.[1]

### b. Loss Regarding Section 371 count

Both defendants were convicted of conspiring to defraud the United States under 18 U.S.C. § 371 in Count 1.

Under U.S.S.G. § 2T1.9, the base offense level for each defendant is also tied to the offense level as determined under sections 2T1.1 and 2T4.1. As noted in the PSR, the Probation Office calculated (and the government agrees) that co-defendant Sean David Morton's base offense level for the section 287 offenses as 26. Since defendant Melissa Morton was convicted of conspiracy, her base offense level is that of her co-conspirator, defendant Sean David Morton, which is 26, as this captures the total loss of both conspirators as the object of their offenses (with the cumulative total of defendants' false claims is $12,475,285.13). U.S.S.G. §§ 2T1.9, 4.1, PSR ¶¶ 36-47, 56.

### c. Loss Regarding Section 514 counts

As charged in Counts 1, overt act no. 50, 8 and 33 through 56 of the FSI, defendant was convicted of making and passing false financial instruments with respect to herself and her clients.

        *iii.*    *Facts proven at trial re: Counts 1, overt act no. 50 and 8*

With respect to defendant's making and passing false financial instruments for herself to the IRS, as proven at trial, in 2013, defendant submitted a false bond to the IRS in the amount of $600,000, in purported payment of any outstanding tax liability with the IRS. See Declaration, Exhibit 21.

---

[1] If using the Sentencing Guidelines § 2B1.1 (which, the government maintains that the tax tables are more appropriate), defendant's base offense level is **13**. PSR, ¶¶ 41-52.

### iv. *Facts proven at trial re: 33 through 56*

Defendant's criminal conduct involved the marketing of fictitious financial instruments to other individuals as a way to pay off debt. In total, the government proved that defendants made and passed 24 fictitious financial instruments on behalf of others individuals.

### v. *Applicable Loss*

The total amounts of the check/bonds defendant and her co-conspirator made and passed are astronomical—the principal amounts of said instruments range from $50,000 (Count 32) to $10 million (Count 7).

The United States argues that the correct amount of loss as to the making and passing of fictitious financial instruments is not the amount of the false check/bonds themselves, but rather, the amount of the debt the check/bonds were trying to pay off on behalf of the defendant or his clients if the scheme had worked.

As to defendant's making and passing of her false bond, defendant was trying to pay off the erroneous refund the IRS issued to her co-conspirator in the amount of $480,322.55. See Declaration, Exhibit 21. Defendant made and passed the false bond as a form of payment to the IRS for this debt, since she and her co-conspirator had otherwise disposed of the erroneous refund shortly after receiving it.

As the Court is aware, in September 2015, the United States searched defendants' home pursuant to a warrant, wherein client files prepared and maintained by defendants were found. In the various client files were copies of the balances of the debts each client was trying to resolve by using defendant's bond scheme. Attached hereto are copies of the bills/statements for the clients, redacted for personal identifying information, which show the balances of the clients' debt they were trying to resolve. See Declaration, Exhibits A-U. In issuing and passing these bonds, defendants intended to defraud the various institutions receiving the

-6-

subject bonds. Therefore, the intended loss should be calculated based on the total outstanding debts sought to be discharged by the use of the bonds, as follows:

| Count | Client | Exhibit | Debtor/Bank Recipient | Amount |
|---|---|---|---|---:|
| 9 | D.B. | A | IRS | $153,689 |
| 10 | Sean David Morton | B | CA FTB | $115,816 |
| 11 | W.P.G. | C | Quicken Loans | $382,353 |
| 12 | W.P.G. | D | IRS | $44,497 |
| 13 | W.F.K. | E | PNC Bank | $110,000 |
| 14 | A.M. | F | PennyMac | $233,563 |
| 15 | M.W. | G | Chase | $66,734 |
| 16 | D.N.M. | H | Bank of America/AAA | $25,540 |
| 17 | D.N.M. | I | BJ/Barclay/Comenity | $32,389 |
| 18 | D.N.M. | J | Costco/AMEX | $9,484 |
| 19 | M.B.R. | K | Chevron | $403,630 |
| 20 | M.B.R. | L | ACS | $66,868 |
| 21 | M.C.U. | M | Chase | $26,000 |
| 22 | S.H.Y. | | Contra Costa County Treasurer | n/a |
| 23 | D.W. | N | CitiMortgage | $134,475 |
| 24 | E.C. | O | Santander Bank | $277,916 |
| 25 | T.C. | | Chase | n/a |
| 26 | P.M. | P | Nationstar | $236,024 |
| 27 | B.L. | | Navient | $75,000 |
| 28 | M.A.E. | Q | IRS | $204,582 |
| 29 | M.A.E. | U | CA FTB | $54,930 |
| 30 | M.G.K. | V | Nationstar | $444,682 |

| Count | Client | Exhibit | Debtor/Bank Recipient | Amount |
|---|---|---|---|---|
| 31 | D.M.S. | W | Barclay | $15,185 |
| 32 | N.J.Z. | X | Bank of America | $37,428 |
|  |  |  | *Total Intended Debt to be paid by bonds for clients:* | $3,150,786 |
| 6/7/8 | Sean David Morton | 14/153/21 | *Defendant SDM's Debt with the IRS which defendant MM tried to pay off using the $600,000 bond:* | $480,322.55 |
|  |  |  | **Total Intended Debt to be paid by check/bonds:** | $3,631,108.55[2] |

See Declaration, Exhibits 21, A-U; Exhibits 14 and 153.[3]

Based on the government's calculation of the intended loss of defendant's use of false bonds to pay off her debt with the IRS, and the intended loss of defendant's clients with their purchase of the bonds, under U.S.S.G. § 2B1.1, defendant's total offense level for each of the violations of 18 U.S.C. § 514 is **25**. PSR, ¶ 28, 57-64. The base offense level is 7, as defendant was convicted of an offense (18 U.S.C. § 514) referenced in the Sentencing Guidelines §2B1.1, and these offenses have a statutory maximum term of imprisonment of 25 years. The offense level is increased by 18 levels because the intended loss is more than $3.5 million, but less than $9.5 million. U.S.S.G. § 2B1.1(b)(1)(J).

---

[2] There appears to be a mathematical error in the PSR, ¶ 28.

[3] Exhibits 14 and 153 were previously submitted to the Court with the government's sentencing position for defendant Sean David Morton, Docket No. 225-2.

### d. Combined Offense Levels and Recommended Sentence

Pursuant to U.S.S.G. §§ 3D1.1 and 1.2, the loss relating to the Form 1099-OID scheme by defendant should be one "Group of Closely Related Counts" (Group #1) and the loss pertaining to the bonds defendant made and passed on her behalf and that of her clients should be a separate Group (Group #2). PSR, ¶¶ 37-41. These separate Groups each involve distinct criminal undertakings by the defendant, while within each group, the individual actions involve substantially the same harm and criminal objective.

Under U.S.S.G. § 3D1.3, the highest offense level for defendant is with respect to Group #1, as her total offense level is 26, while the Group #2 offense level is 25. PSR, ¶ 65.

Under U.S.S.G. § 3D1.4, defendant's Combined Offense Level is determined by taking the offense level applicable to the Group with the highest offense level, here Group #1, increasing that offense level pursuant to the applicable table in this section of the Sentencing Guidelines. Then, the Court must count one additional Unit for each Group that is equally serious or from 1 to 4 levels less serious, which is Group #2 at Level 25. PSR, ¶¶ 65-68. The United States agrees with the Probation Office that defendant's combined offense level under the Sentencing Guidelines is 28. With a criminal history category of I, defendant sentencing guidelines range is 78-97 months.

### IV. Consideration of Section 3553(a) factors

Defendant's criminal conduct, considered in light of the 3553(a) factors discussed below, calls for a meaningful punishment and a sentence of **78 months** imprisonment.

In determining the appropriate sentence to be imposed, this Court must also consider all of the sentencing considerations set forth in Title 18, United States

Code, Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).

### a. Nature and circumstances of offense and defendant's history and characteristics

In seeking an 78-month sentence, the United States is consciously advocating for a significant period of incarceration. This period of incarceration is commensurate with the seriousness and flagrancy of defendant's crimes, as well as her recent behavior of being caught with her fugitive co-defendant.

In her sentencing papers, defendant asserts that this is her first time in trouble with the law, which is not true. Docket 265, p. 4. Defendant has a long of perpetrating other frauds with her co-conspirator. In 2010, the Securities and Exchange Commission brought a civil suit against both defendants for their participation in a foreign currency exchange scheme. See Securities and Exchange Commission v. Sean David Morton, et al., Case No. 1:10-cv-01720-KBF (S.D. N.Y 2010).[4] Defendants filed multiple sovereign citizen-type documents, all of

---

[4] During the SEC investigation, on March 18, 2009, defendants filed a civil lawsuit against the attorneys for the SEC, the Attorney General, and the U.S. Attorney of

1  which were rejected by the District Judge.  At the conclusion of the suit, on March
2  7, 2013, the District Court entered judgment against defendants in the amount of
3  approximately $11 million for the losses related to their currency scheme.
4       Also, on June 27, 2013, defendants filed for Chapter 7 bankruptcy protection
5  in this District.  See In re Morton and Thomson, Case No. 2:13-bk-26725-BB
6  (C.D. Cal. 2013).  This Court is familiar with the litany of false statements made
7  by defendants in their Section 341 meeting of creditors proceedings, as submitted
8  by the United States to the Court in supplemental briefing prior to trial in this case.
9  Docket No. 173.  Defendants were questioned under oath by the U.S. Trustee's
10 Office and the Chapter 7 trustee, wherein they lied in answering simple questions,
11 for example, if they owned bank accounts.  Thereafter, the United States Trustee's
12 Office filed an adversary proceeding against defendants to deny their discharge.
13 See United States Trustee v. Morton, et al., 2:13-ap-01927-BB (C.D. Cal. 2013).
14 After protracted litigation, on February 24, 2015, the United States Trustee's
15 Office was successful against defendants to deny any bankruptcy discharge under
16 11 U.S.C. § 727(a)(4)(A).  Again, throughout both the bankruptcy and the
17 adversary proceedings (which itself lasted 2 years), defendants filed a multitude of
18 frivolous tax-protestor type documents, all of which cost the government and the
19 Bankruptcy Court time and effort in which to respond.

---

this District, to enjoin the investigation, declare that the SEC had no jurisdiction over the matter of the currency trading in which defendants were involved, and accuse the SEC attorneys of criminal misconduct.  See Morton, et al. v. Ellenbogen, et al., Case No. CV 09-1875-PA-JCx (C.D. Call 2009).  On motion by the government, the Court dismissed the action.  See Docket No. 12.  On June 29, 2009, defendants appealed the District Court's ruling to the Ninth Circuit.  See Morton, et al. v. Ellenbogen, et al., Case No. 09-56041 (9th Cir. 2009).  On September 15, 2009, the Ninth Circuit affirmed the dismissal by the District Court.  See Docket No. 20.

-11-

That defendant's behavior in perpetrating this crime is an aberration is simply not true given her past behavior. Regardless of who generated the scheme, defendant has always willingly participated in it. Most of defendant's criminal behavior in this instance is attributed to her involvement of either the 1099 OID or bond schemes, especially the latter, to which she meticulously implemented for herself and her clients. At trial, the government had an IRS-CI Special Agent computer specialist testify about where the templates for the false bonds were located on defendants' computer under the user name "Melissa." See Trial Transcript, vol. 2, pp. 337-38.

Further, even in light of her multiple convictions and the imposition of her sentence, defendant was caught with defendant Sean David Morton when he was apprehended in Desert Hot Springs on August 21, 2017.

Nothing in the defendant's personal characteristics warrants a downward departure or a variance.

### b. Deterrence, respect for the law, and protection of the public

An 78-month sentence adequately addresses, in accordance with section 3553(a), the need for the sentence imposed "to promote respect for the law," as well as "the need to afford adequate deterrence to criminal conduct." The United States relies heavily on deterrence to enforce the internal revenue laws—more so than many other statutes. The reason is simple: the number of taxpayers in the United States far, far exceeds the number of auditors and criminal investigators available at the IRS.

The need for deterrence, both specific and general, warrants a strong sentence. This case presents a powerful need and opportunity for this Court to deter similar "sovereign citizen" fraudsters. Members of the tax-defier movement will take note of whatever sentences the Court imposes upon defendant in this case. Real deterrence can only be achieved by a significant jail sentence.

Again, the Government rejects defendant's assertion that the crimes for which defendant was convicted was the only time she has been involved in tax protestor behavior, as her past civil and bankruptcy cases prove differently.

To date, defendant has not accepted responsibility for her criminal conduct. In light of his ongoing denial of guilt, the sentence recommended by the government is sufficient, but not greater than necessary, to address this concern.

### c. Need to provide educational or vocational training

The need to provide defendant with any educational or vocational training, medical care, or other correctional treatment may be a factor in this case. Defendant may benefit from further educational or vocational training that she could receive while incarcerated. Further, defendant has indicated that she suffers from medical issues, which could be addressed by the comprehensive care provided by the Bureau of Prisons.

### d. Need to avoid unwarranted sentencing disparities

The need to avoid unwarranted sentencing disparities also entails a consideration of the sentences that defendants in other similar cases have received. Defendant Sean David Morton testified about two individuals from whom he and defendant Melissa Morton learned the OID and bond schemes: Brandon Adams and Gordon Hall, both of whom, as the government pointed out on cross examination, are currently incarcerated for committing crimes similar to those committed by defendant. See Trial Transcript, vol. 4, pp. 34, 35, 95, 96, 104, 105.

At trial, defendant Sean David Morton testified in his direct that both defendants had their false OID returns prepared by Brandon Adams. See Trial Transcript, vol. 4, p. 10. In 2014, Adams was indicted for violations of 18 U.S.C. § 514 in the District of Arizona, and on January 13, 2015, plead guilty to two violations of 18 U.S.C. § 514. See United States v. Adams, Case No. CR 14-00184-2-PHX-NVW (D. Ariz. 2014). On June 16, 2015, Adams was sentenced to 40 months imprisonment. Id.

-13-

At trial, defendant Sean David Morton testified that defendants learned about the bond scheme from Hall, who often stayed at defendants' house as a guest. See Trial Transcript, vol. 4, pp. 104, 105. Hall was indicted, along with Brandon Adams, for violations of 18 U.S.C. § 514. See United States v. Hall, Case No. CR 14-00184-1-PHX-NVW (D. Ariz. 2014). On January 22, 2015, after a trial, Hall was convicted of four counts of violations of 18 U.S.C. § 514, and was sentenced on June 17, 2015 to 96 months incarceration. Id. Following an appeal by Hall, the Ninth Circuit upheld the ordered term of incarceration, but remanded the case to the District Court for clarification on 2 conditions of Hall's supervised release. Id. The recommended sentence of 78 months is well within the range for similarly situated defendants who taught the defendants the schemes they used and peddled.

### e. Defendant's minimization of her criminal acts

At trial, defendant's sole defense was that, being a dutiful wife, she was strongly influenced by her co-conspirator husband and Brandon Adams, who taught the OID scheme at seminars to which defendant attended with Sean David Morton. Defendant has indicated that she will not be pursuing this defense in her sentencing argument, as it is not true; defendant was lockstep with her husband in participation in both schemes.

First, as to the OID scheme, each and every time defendant Sean David Morton mailed a false income tax return to the IRS, defendant Melissa Morton did the same. Exhibits 15, 17, 18 and 19.[5] The amount of the false claims may have been different, but the act of filing the false claims was done by both defendants, often on the same dates. As testified by the IRS custodian of record, the IRS

---

[5] Exhibits 15 and 18 were previously submitted to the Court with the government's sentencing position for defendant Sean David Morton, Docket No. 225-7 and 225-8.

assessed defendant Sean David Morton 19 frivolous filing penalties based on returns submitted by him, and assessed Melissa Morton 14 of the same penalty assessments for her frivolous returns. Trial Transcript, vol. 1, pp. 152, 172. Further, the IRS custodian testified that defendant filed false claims for refund after having received at least 2 types of notices from the IRS which states that the position taken on her returns was considered frivolous. Trial Transcript, vol. 1., pp. 152-154, 157-160. Further, when it came to the disbursement of the erroneous refund, the evidence showed that it was defendant Melissa Morton that moved most of the funds to the two newly-established Washington Mutual accounts. Exhibit 24, pp. 9, 10. Finally, defendant Sean David Morton testified at trial that defendant Melissa Morton was the one who handled the money. Trial Transcript, vol. 4, p. 653. The facts proven at trial confirm that Melissa Morton's role in the schemes was equal to that of her co-conspirator husband.

Secondly, when it came to the bond scheme, both defendants submitted the same bond to the IRS on the same day—the only difference was the amount of the bonds. Exhibits 20 and 21.[6] When it came to peddling the scheme to others, it was defendant Melissa Morton who meticulously handled all of the paperwork between the clients and the bank/financial institutions. As bond-client Barbara Lavender testified at trial, defendant Melissa Morton was her main point of contact for the bond process for all paperwork and email correspondence. Trial Transcript, vol. 2, p. 483. Melissa Morton signed and notarized virtually every bond. Exhibits A-U. At trial, recall that the government introduced metadata that every template for the bond clients were saved under the user profile "Melissa." Trial Transcript, vol. 2, p. 338. Defendant Sean David Morton may have sold the program to clients, but Melissa Morton made the bonds happen.

---

[6] Exhibit 14 was previously submitted to the Court in Docket No. 225-6.

Finally, there is no question that both defendants knew that their schemes were false. Again, the government introduced evidence that both defendants got warning letters from the IRS that their OID returns were false, and yet, both filed more false returns after these warnings, including all of the claims that are counts 2 through 5. Further, at trial, the government introduced a video recording of defendant Sean David Morton joking with Brandon Adams about the legality of the scheme, and showed defendant Melissa Morton was sitting next to Sean David Morton at this lecture. Defense Exhibit B. The evidence was clear that Melissa Morton was equally complicit in both schemes.

For all of these reasons, defendant's criminal conduct warrants a significant prison sentence of 78-months. There are no other Section 3553(a) factors in this case which militate against imposition of such a sentence upon defendant; to the contrary, the 3553(a) factors on balance support the imposition of the recommended punishment. The United States respectfully submits that this sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553(a).

### f. Need for restitution

As noted by the Probation Office, pursuant to 18 U.S.C. § 3663, the Court should enter a restitution order against defendant in the amount of $480,322.55 to be paid to the IRS, which represents the amount of the erroneous refund issued to defendant Sean David Morton for defendant' false 2008 income tax return, which, as proven at trial, defendant Melissa Morton subsequently transferred to two jointly owned bank accounts on the same day the refund was issued. The government does not recommend the imposition of a fine. PSR, ¶¶ 163, 167; Letter, pp.1-2.

///

///

## V. Conclusion

For nearly a decade, defendant has made deliberate criminal choices, which resulted in her conviction for serious crimes, which warrant an equally serious sentence.

For all of the above stated reasons, the Court should impose a sentence upon defendant of 78 months imprisonment, followed by a 5-year term of supervised release. A restitution order in the amount of $480,322.55 should be entered against defendant, and defendant should be ordered to pay a special assessment of $2,900 to the Court. Additionally, such sentence should include (or require defendant to be subject to) the terms and conditions enumerated by the Probation Office.

Respectfully submitted,

SANDRA R. BROWN
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

DATED: 09/05/17      \_/s/_____
VALERIE L. MAKAREWICZ
JAMES C. HUGHES
Assistant United States Attorneys
Attorneys for the United States of America